UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSICA L. C.

                 Plaintiff,

v.                                                                1:20-CV-1913
                                                                  (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

JAMES RATCHFORD                                     JAMES RATCHFORD, ESQ.
  Counsel for Plaintiff
1207 Delaware Ave., Ste. 208
Buffalo, NY 14209

LEWIS SCHWARTZ, PLLC                                LEWIS SCHWARTZ, ESQ.
  Counsel for Plaintiff
1231 Delaware Ave., Ste. 103
Buffalo, NY 14209

FREDERICK LAW OFFICES, PLLC                         SARAH FREDERICK, ESQ.
  Counsel for Plaintiff
4467 S. Buffalo St.
Orchard Park, NY 14127

U.S. SOCIAL SECURITY ADMIN.                         RICHARD HUGH FOX, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 31.)  The court has jurisdiction over this matter pursuant to

42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1979.  (T. 101.)  She received her GED.  (T. 357.)  Generally, Plaintiff's alleged disability consists of depression, anxiety, bipolar disorder, agoraphobia, asthma, sciatic nerve pain, and shoulder pain.  (T. 356.)  Her alleged disability onset date is January 31, 2005.  (T. 101.)  Her past relevant work consists of cashier, cleaner, and clerk. (T. 358.)

### B.     Procedural History

On June 14, 2010, Plaintiff applied for a period of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 101.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On February 3, 2012, Plaintiff appeared before the ALJ, William M. Weir.  (T. 32-48.)  On June 22, 2012, ALJ Weir issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 102-119.)  On June 14, 2013, the Appeals Council ("AC") issued a Notice of Order remanding the case to the ALJ.  (T. 120-124.)

On October 21, 2013, Plaintiff again appeared before ALJ Weir.  (T. 49-92.)  On October 10, 2014, ALJ Weir issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-31.)  On April 8, 2016, the AC denied Plaintiff's request for

review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

Thereafter, Plaintiff timely sought judicial review in this Court.

While Plaintiff's claim was pending, she filed a new application for SSI under Title

XVI of the Social Security Act and was subsequently found disabled as of May 25,

2016, her application date.  (T. 1015.)

On September 28, 2017, the U.S. District Court for the Western District of New

York remanded Plaintiff's case for further proceedings.  (T. 1002-1011); *Critoph v.*

*Berryhill*, No. 1:16-CV-00417 (MAT), 2017 WL 4324688 (W.D.N.Y. Sept. 28, 2017).

The AC issued a Remand Order on January 24, 2018, vacating ALJ Weir's October 10,

2014, decision and remanded the claim back to the ALJ.  (T. 1013-1015.)  The AC

confirmed Plaintiff filed a subsequent application for disability benefits on May 25, 2016,

that the State Agency found her disabled as of May 25, 2016, and that the AC reviewed

that determination and found it was supported by substantial evidence.  (*Id.*)  The AC

concluded that the "period prior to May 25, 2016, requires further adjudication."  (*Id.*)

On October 30, 2018, Plaintiff appeared before the ALJ Melissa Lin Jones.  (T.

925-972.)  A supplemental hearing was held on April 30, 2019.  (T. 908-924.)  On May

13, 2019, ALJ Jones issued a written decision finding Plaintiff not disabled for the

closed period from June 14, 2010, through May 24, 2016.  (T. 1017-1042.)  On May 21,

2020, the AC granted review and issued a Remand Order vacating the May 13, 2019

decision and remanding for further proceedings.  (T. 1043-1048.)  The AC instructed the

ALJ upon review to limit his findings and determination to the period prior to May 25,

2016.  (T. 1047.)  The AC further instructed the ALJ "[a]s warranted by any relevant

updates to the record, give further consideration to [Plaintiff's] maximum [RFC] during

the period prior to May 25, 2016 and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (*Id.*) Lastly, the AC directed the ALJ to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base with respect to the period prior to May 25, 2016. (*Id.*)

On August 10, 2020, Plaintiff appeared before ALJ Stephen Cordovani. (T. 883-907.)[1] On September 2, 2020, ALJ Cordovani issued a written decision finding Plaintiff not disabled from June 14, 2010, through May 24, 2016. (T. 853-882.) Plaintiff again timely sought judicial review in this Court.

### C.    ALJ Cordovani's 2020 Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 859-871.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity from June 14, 2010, through May 24, 2016. (T. 859.) Second, the ALJ found from June 14, 2010, through May 24, 2016, Plaintiff had the severe impairments of bilateral carpal tunnel syndrome, lumbar spine degenerative disc disease, left shoulder tendonitis, anxiety disorder, personality disorder, bi-polar disorder, panic disorder with agoraphobia, and learning disorder. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 860.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> less than the full range of light work as defined in [20 C.F.R. § 416.967(b)], because she was able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Although [Plaintiff] was unable to climb ladders, ropes, or scaffolds, she was able to

---

[1]        All participants appeared by telephone due to the COVID-19 pandemic.

occasionally balance, stoop, kneel, crouch, crawl, and/or climb ramps and stairs.  [Plaintiff] was able to frequently handle, finger, and feel with her bilateral upper extremities, and she was able to use her left non-dominant arm to occasionally reach overhead, as well as frequently reach in all other directions.  [Plaintiff] needed to avoid work around hazards such as unprotected heights or dangerous moving machinery.  [Plaintiff] was unable to work with vibratory machinery, and she needed to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and other respiratory irritants.  In addition, [Plaintiff] was able to understand, remember, perform, and carry out simple, routine instructions and tasks, but she needed to avoid work at a production-rate pace (*i.e.*, assembly line work).  [Plaintiff] was able to make simple work-related decisions when dealing with changes in a work setting.  [Plaintiff] was able to engage in occasional interaction with supervisors, co-workers, or the public, and she was off-task for 10% or less of an eight-hour workday. range of light work.

(T. 863.)[2]  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 870-871.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to explain why the favorable portion of the medical opinion of the medical expert ("ME") was rejected.  (Dkt. No. 22 at 19-22.)  Second, Plaintiff argues the ALJ's RFC finding was not based on substantial evidence with regard to off-task limitations.  (*Id.* at 22-30.)  Third, and lastly, Plaintiff

---

[2]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).

argues remand for calculation of benefits is warranted.  (*Id.* at 30-32.)  Plaintiff also filed a reply in which she reiterated her original arguments.  (Dkt. No. 29.)

### B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues the ALJ's decision is supported by substantial evidence and free of legal error.  (Dkt. No. 24 at 10-11.)  Second, Defendant argues the physical limitations in the ALJ's RFC finding are supported by the evidence.  (*Id.* at 11-17.)  Third, Defendant argues the mental limitations in the ALJ's RFC finding are supported by the evidence.  (*Id.* at 17-27.) Fourth, and lastly, Defendant argues Plaintiff has not met her burden of proving that the RFC finding was not supported by substantial evidence and remand for calculation of benefits is improper.  (*Id.* at 27-31.)

## III.    RELEVANT LEGAL STANDARD

### B.    Standard of Review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). It is not the Court's "function to determine *de novo* whether a plaintiff is disabled." *Brault,* 683 F.3d. at 447.  "In determining whether the agency's findings were supported

by substantial evidence, the reviewing court is required to examine the entire record,

including contradictory evidence and evidence from which conflicting inferences can be

drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks

omitted).  "If evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld."  *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d

Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can

reject those facts 'only if a reasonable factfinder would have to conclude otherwise.' "

*Brault,* 683 F.3d at 448.  The Court "require[s] that the crucial factors in any

determination be set forth with sufficient specificity to enable [the reviewing Court] to

decide whether the determination is supported by substantial evidence."  *Estrella v.

Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (alterations and internal quotation marks

omitted).

### C.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §

416.920.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).

## IV.   ANALYSIS

### A.  RFC for Light Work

Plaintiff argues the ALJ's RFC determination, that Plaintiff could perform light work with six hours total standing in an eight-hour workday, was not supported by substantial evidence.  (Dkt. No. 22 at 19-22.)  Plaintiff asserts the standing limitation in the RFC conflicts with medical opinion testimony provided at Plaintiff's October 2018 hearing and the ALJ failed to provide an explanation for not adopting the opined limitation.  (*Id.*)  Plaintiff does not assert the ALJ erred in his RFC determination that Plaintiff could perform the lifting/carrying requirements of light work or the additional non-exertional limitations found by the ALJ.  Therefore, for ease of analysis, only evidence pertaining to Plaintiff's ability to perform the standing requirements of light work will be discussed.  For the reasons outlined below, the ALJ properly concluded Plaintiff was able to stand and/or walk for six hours in an eight-hour workday.

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations."  20 C.F.R. § 416.945(a)(1).  An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ.  *Id.* § 416.927(d)(2). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id.* §§ 416.927(d), 416.945(a)(3), 416.946(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that

preclude any substantial gainful activity.  *Id.* §§ 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 416.967(b).  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing.  *Id.*  "The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (citing 20 C.F.R. § 404.1567(b)).

As outlined below, testimony provided by the medical expert in October 2018 conflicts, on its face, with the RFC determination provided by the ALJ.  However, testimony provided at the April 2019 hearing resolved the apparent conflict.  In the alternative, despite any apparent conflict, there is substantial evidence in the record to support the ALJ's determination Plaintiff could perform the standing/walking requirements of light work.  "Where substantial evidence supports the plaintiff's account, but there is also substantial evidence from which the ALJ reasonably could have ruled against the plaintiff, the court must defer to the agency determination."  *Barrere v. Saul*, 857 F. App'x. 22, 24-25 (2d Cir. 2021).

Further, although the ALJ did not specifically address the apparent conflict between the medical expert's testimony and RFC in his written decision, the ALJ's provides sufficient analysis to support his RFC determination that Plaintiff could perform the walking/standing requirements of light work.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record "permits us to glean the rationale of an ALJ's decision").

The present case contains 1905 pages of documents including five hearings, three prior written decisions, two AC remands, and one U.S. District Court decision.  The ALJ's written decision provided a sufficient summary of the extensive procedural record, hearing testimony, and evidence pertaining to the relevant time period.  (T. 856-871.)  Therefore, the ALJ did not commit legal error in failing to specifically discuss the doctor's October 2018 statement.

The standing limitation at issue was provided at Plaintiff's October 2018 hearing by a non-examining medical exert, Ronald Kendrick, M.D.  Dr. Kendrick reviewed Plaintiff's medical record – for the closed period from June 2010 to May 2016 - and provided testimony at the October 30, 2018, and April 30, 2019, hearings.  (T. 915-922, 954-964.)  During the October 2018 hearing, Dr. Kendrick testified that based on Plaintiff's impairments she would be limited to work at "the light level [. . .] with restrictions in the upper extremities to occasional overhead on the [. . .] left side and frequent use of her upper extremities in all modalities."  (T. 955.)

When asked if Plaintiff had any balance limitations, Dr. Kendrick answered he "would classify the postural as occasional."  (T. 956.)  When asked which postural limitations, Dr. Kendrick responded "[a]ll of them, standing, stooping, kneeling, crawling, crouching."  (*Id.*)[3]  Dr. Kendrick further testified that he "would prohibit ladders, ropes, and scaffolds, but she could do stairs occasionally."  (*Id.*)  Lastly, the doctor indicated

---

[3]      Standing is an exertional, not a postural, activity.  *See* SSR 83-10 (defining exertional activity as "One of the primary strength activities (sitting, standing, walking, lifting, carrying, pushing, and pulling) defining a level of work.").  Non-exertional activities are "work activities other than the primary strength activities."  *Id.*; *see also* SSR 83-14 (Any functional or environmental job requirement which is not exertional is "nonexertional").  Postural limitations are a group of non-exertional limitations and involve such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouch, or crawling.  SSR 96-9p (outlining non-exertional limitations as restrictions including postural, manipulative, visual, communicative, and environmental).

Plaintiff should avoid "workplace hazards . . . such as dangerous moving machinery, unprotected heights, and the like . . . any heavy vibrating tools." (T. 956-957.) Plaintiff argues based on a literal reading of the testimony provided by Dr. Kendrick at the October 2018 hearing; Plaintiff could only stand for two hours in an eight-hour workday. (Dkt. No. 22 at 19-22.)

Dr. Kendrick testified again at a supplemental hearing on April 30, 2019. (T. 915-922.) The ALJ and Dr. Kendrick had the following exchange regarding the doctor's prior testimony:

> ALJ:  Okay, so then when I had inquired as to whether or not the impairments that the claimant did have could be expected to result in any limitations, you had advised me that in your opinion, such an individual would experience limitations as follows. They would be physically capable of light work as defined in the regulations, with only occasionally reaching overhead with the left non-dominant arm. Frequent reaching in other directions. Frequent handling, fingering, or feeling bilaterally. Occasional balance, stoop, kneel, crouch, crawl. Never climbing ladders, ropes, or scaffolds. Occasionally climbing ramps or stairs. This, the impairments that you found to be severe could be expected to result in a limitation of an inability to work around dangerous moving machinery, heavy vibrating tools, or working at unprotected heights. You also indicated that, one moment. I think that that was the elimination of or the extent of the limitations that you had testified to. Do your notes show anything different from what I just described?
>
> ME:  Not really.
>
> ALJ:  Okay and based upon your review of the additional medical evidence, is there a change in your opinion regarding the limitations that you testified to previously?
>
> ME:  No.

(T. 917-918.)[4]

---

[4]      In her summary of the April 2019 hearing testimony Plaintiff overlooks the ALJ's summation of Dr. Kendrick's previous testimony which provides Plaintiff can perform the exertional demands of light work, with no additional limitation in standing. (Dkt. No. 22 at 18.)

Based on a reading of both hearing transcripts it appears that Dr. Kendrick's October 2018 statement - that standing was a postural limitation and therefore Plaintiff could only perform it occasionally - was either mistranscribed or he misspoke.  The exchange between the ALJ and Dr. Kendrick at the April 2019 hearing indicates the doctor limited Plaintiff to light work with additional non-exertional limitations as summarized by the ALJ.  Plaintiff's focus on the doctor's October 2018 testimony overlooks Dr. Kendrick's April 2019 testimony which clarified any apparent conflict.  Plaintiff asserts, "If there was any question as to whether Dr. Kendrick misspoke, the prior ALJ had an opportunity to clarify Dr. Kendrick's opinion."  (Dkt. No. 29 at 4.)  The ALJ's April 2019 exchange did just that.  Therefore, Plaintiff's argument that the ALJ failed to resolve a conflict between Dr. Kendrick's October 2018 testimony and the RFC is without merit.

Further the ALJ's written decision provides sufficient analysis to support the RFC determination that Plaintiff could perform the exertional demands of light work, specifically the standing requirments.  In his written decision, the ALJ concluded the RFC determination was consistent with and supported by the observations of treating, reviewing, and examining sources in the medical records from June 14, 2010, through May 24, 2016.  (T.867.)  The ALJ stated:

> [i]n reaching this conclusion, I note that the previous [ALJ] had two hearings, including a supplemental hearing with a medical expert, and she found that [Plaintiff] had a [RFC] quite similar to the one listed above.  [Plaintiff's] representative appealed, noting that the DOT addressed only frequent bilateral reaching for the three Step 5 jobs, while the prior decision found that [Plaintiff] was restricted to occasional overhead reaching with the left arm.  Of note, no other arguments were made in the attorney's appeal.  The Appeals Council agreed, remanding the decision primarily for this issue.  The attorney's appeal and the Appeals Council's remand order did not identify or address any other medical or vocational issues with the prior

decision.  No arguments were made about the substance of the [RFC], no arguments were made about the weighing of opinions, and no arguments were made about any of the findings at Steps One through Four. Remarkably, since the last decision was issued, there has been no new evidence added to the record that would be relevant to the period at issue, which is from June 14, 2010 through May 24, 2016.  In fact, no new evidence has been added at all for any period.  I generally concur with the findings of the prior decision, and as noted below, I have explored the discrepancies with the DOT in greater detail.

(*Id.*)(internal citations omitted).

The ALJ noted Dr. Kendrick's testimony at Plaintiff's previous hearings and afforded his opinion "very significant weight."  (T. 869.)  The ALJ stated he incorporated the restrictions Dr. Kendrick identified into the RFC.  (*Id.*)  Indeed, the ALJ's RFC is consistent with testimony provided at the April 2019 hearing. (Compare T. 863, 917-918.)

The ALJ's reasoning for not limiting Plaintiff's ability to stand is also clear from his assessment of the medical source statement completed by Kenneth Murray, M.D.  (T. 869.)[5]  Dr. Murray opined, in relevant part, Plaintiff could stand/walk less than two hours in an eight-hour workday.  (T. 847.)  The ALJ afforded Dr. Murray's opinion "partial weight."  (T. 869.)  The ALJ concluded the "more limiting opinions are contradicted by the conservative level of treatment" and Plaintiff's activities of daily living.  (*Id.*)  Lastly, the ALJ noted Dr. Murray examinations did not reveal musculoskeletal or gait abnormalities that would support his standing and walking limitations.  (*Id.*)  Therefore, based on his

---

[5]     Although Plaintiff asserts Dr. Murray's statement supports a finding of disability, Plaintiff does not assert the ALJ erred in his analysis of the opinion.  (*see generally* Dkt. No. 12, Dkt. No. 29 at 11.)

analysis of Dr. Murray's opinion, it is apparent the ALJ did not find a restriction to less than two hours of walking/standing supported by the record.

Additionally, the AC directed the ALJ, in part, to give further consideration to Plaintiff's maximum RFC during the period prior to May 25, 2016, "as warranted by any relevant updates to the record." (T. 1047.)  As noted by the ALJ, no new evidence was added to the record that would be relevant to the period at issue. (T. 867.)  Therefore, the ALJ properly complied with the AC order to further consider Plaintiff's RFC in light of any relevant updates.

Overall, regardless of any apparent conflict between Dr. Kendrick's October 2018 testimony and the ALJ's RFC, the ALJ's written decision provides sufficient analysis to support his finding that Plaintiff retained the functional capacity to perform the standing/walking requirements of light work during the limited time period in question.

### B. Off-Task Limitation

Plaintiff argues the ALJ erred in determining Plaintiff would be off-task for 10% or less of an eight-hour workday without medical authority or any substantial evidence. (Dkt. No. 22 at 27.)  Plaintiff argues the ALJ failed to provide a narrative discussion describing how the evidence supported this specific limitation and the ALJ relied on his own "surmise" rather than a medical opinion.  (*Id.*); citing SSR 96-8p; citing *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014).  Here, the ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination. *Curry v. Comm'r Soc. Sec.*, 855 F. App'x 46 n.3 (2d Cir. May 14, 2021).

14

First, an RFC finding "is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry,* 855 F. App'x at 46 n.3; *see* 20 C.F.R. § 416.927(d)(2).  The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").  In addition, the Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a *per se* error requiring remand.  *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir. 2013).

Second, an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation.  *Cook v. Comm'r of Soc. Sec.,* 818 F. App'x 108, 109-110 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.' . . .  Here, the treatment notes were in line with the ALJ's RFC determinations. Therefore, a medical opinion containing Plaintiff's specific function limitations, whether

provided in a formal medical source statement or contained in medical records, is not required for the ALJ to make an RFC determination.

Third, *Cosnyka* is distinguishable from the case at hand.  In *Cosnyka*, the ALJ credited an orthopedic examiner's opinion that the plaintiff would require "regular comfort breaks," which the ALJ translated into a limitation that the plaintiff would be off-task 10% of the workday which was equivalent to six minutes out of every hour. *Cosnyka*, 576 F. App'x at 46.  The Second Circuit wrote although the ALJ's 10% off-task determination was based on the medical evidence, the determination "that this 'off-task' time translated to six minutes out of every hour, however, was not based on the record but was the result of the ALJ's own surmise."  *Id.* at 46.  Therefore, the Court did not take issue with the 10% off-task finding, but with the ALJ's finding that 10% off-task equated to six minutes of every hour.

In *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. Sept. 2016), the Second Circuit rejected an argument that a limitation was too specific for the ALJ to reach without the direct support of a medical opinion.  In *Johnson*, plaintiff challenged a specific RFC finding that would perform tasks 10 percent slower than average and cited to the *Cosnyka* case to argue that highly specific RFC findings are problematic.  *Id.*  The Second Circuit rejected the argument, clarifying that the problem in *Cosnyka* was not that the ALJ included a highly specific limitation in the RFC finding, but rather that there was "no evidentiary basis" for that limitation.  *Id.*  The *Johnson* court concluded that substantial evidence in the record supported the ALJ's conclusion that Johnson could perform light work as a slightly slower than average pace, and "[t]he fact that the ALJ assigned a particular percentage range (0-10%) to illustrate Johnson's limitation does

not undermine the fact that the ALJ's finding was supported by substantial evidence." *Id.*

Here, as outlined further below, the ALJ did not improperly translate a medical opinion based on his own surmise.  *See Maryjo Y. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0040, 2021 WL 1176018, at *7 (W.D.N.Y. Mar. 29, 2021) (distinguishing the holding in *Cosnyka* where the RFC formulated by the ALJ was supported by plaintiff's daily activities, improvement with treatment, and her own testimony).

The ALJ's mental RFC finding is supported by substantial evidence in the record, including mental status examinations that consistently revealed normal cognition and thought content, and routine treatment notes that showed that Plaintiff's mental condition was stable while she was compliant with prescribed medications.  (T. 866.) The ALJ considered treatment notes and mental status examinations throughout the record.  (*Id.*)  The ALJ also considered instances where examinations revealed some frustration, irritability, anxiety, and mood fluctuation.  (*Id.*)  The ALJ considered that mental status examinations consistently revealed good eye contact, normal psychomotor activity, logical and coherent speech, normal memory, intact attention and concentration, denial of suicidal ideation, and cooperative attitude.  (T. 861, 866.)  The ALJ cited to Plaintiff's admission that she experienced a 50% reduction in symptoms due to prescribed medications.  (T. 864, 866.)

In addition, the ALJ's RFC was supported in part by portions of Dr. Pamela Khurana's and Dr. Murray's treating source opinions, which were given partial weight, as well as the opinion of non-examining State agency psychological consultant Dr. T. Andrews.  (T. 861, 866, 868-870.)

The ALJ gave partial weight to neurologist Dr. Murray's 2013 treating opinion.

(T. 869.)  With respect to Plaintiff's mental functioning, the ALJ considered Dr. Murray's

opinions that Plaintiff could perform low stress jobs, but would be distracted on a

constant basis in part due to migraines.  (*Id.*)  While the ALJ determined that this

opinion supported simple, routine work that was void of production-rate requirements,

Dr. Murray's treatment notes did not support portions of his opinion regarding constant

interference in attention and concentration because examinations consistently reported

normal thought process and intact attention, concentration, and memory.  (T. 863,869.)

Therefore, the ALJ appropriately gave partial weight to portions of this opinion, refusing

to adopt restrictions that were inconsistent with Dr. Murray's own treatment notes. *See*

20 C.F.R. § 416.927 (c)(3) ("The more a medical source presents relevant evidence to

support a medical opinion, particularly medical signs and laboratory findings, the more

weight we will give that medical opinion.").

The ALJ also gave significant weight to portions of psychiatrist Dr. Khurana's

2012 opinion that Plaintiff exhibited no limitations or mild limitations in her ability to

perform simple work, which is consistent with Dr. Khurana's treatment notes that

showed intact cognitive functioning and that Plaintiff was stable when she was

compliant with her medications.  (T. 868.)

In addition, the ALJ gave significant weight to the opinion Dr. Andrews.  (T. 869.)

Dr. Andrews reviewed the evidence of record on September 10, 2010 and assessed no

more than mild and moderate limitations in all areas of mental functioning mental

functioning, and opined that Plaintiff could perform simple tasks independently, maintain

attention and concentration, maintain a regular schedule, and learn new tasks in a low-

contact environment.  (*Id.*)  The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Whipple v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).

Lastly, the ALJ considered Plaintiff's activities including caring for her children, helping her father with his business, attending to her personal care, doing laundry, traveling independently as well as shopping.  (T. 861-862, 866-867.)  The ALJ noted Plaintiff was discharged from mental treatment due to attendance issues.  (T. 867.)

Despite Plaintiff's arguments, the ALJ's finding that Plaintiff would only be off-task up to 10% of a workday is supported by substantial evidence in the record, which included findings of normal attention, concentration, and memory despite both pain and psychiatric symptoms, as well as Plaintiff's capacity to complete her activities of daily living and attend medical appointments.  The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand.  *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020).

Therefore, although no medical source provided a specific off-task limitation, the ALJ's limitation was not a product of his own surmise, but supported by substantial evidence in the record.

### C. Plaintiff's Remaining Arguments

Because remand is not required, the Court need not address whether remand for calculation of benefits is appropriate.

The ALJ has the duty to evaluate conflicts in the evidence. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence). As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 22) is

**DENIED**; and it is further

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 24)

is **GRANTED**; and it is further

      **ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is

further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:      October 27, 2022

                                          William B. Mitchell Carter
                                          U.S. Magistrate Judge